IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WHITLEY DEAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | No. 3:16-cv-2635-M |
| TEXAS TECH UNIVERSITY HEALTH | § | |
| SCIENCES CENTER, CHRISTINA | § | |
| ROBOHM-LEAVITT, and JIM | § | **FILED UNDER SEAL** |
| JANKOWSKI, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Whitley Dean has filed a Sealed Motion to Lift Agreed-Upon Protective Order, *see* Dkt. No. 36 (the "Motion to Lift"), which Chief Judge Barbara M. G. Lynn has referred to the undersigned United States magistrate judge for a hearing, if necessary, and for determination under 28 U.S.C. § 636(b), *see* Dkt. No. 40.

Defendants Texas Tech University Health Sciences Center ("TTUHSC"), Christina Robohm-Leavitt, and Jim Jankowski filed a response, *see* Dkt. No. 53, and Plaintiff filed a reply, *see* Dkt. No. 59.

The Court heard oral argument on the Motion to Lift on August 22, 2017. *See* Dkt. No. 66. At the parties' suggestion and based on the Court's order, *see* Dkt. No. 67, Defendants then filed a supplemental brief in opposition to the Motion to Lift, *see* Dkt. No. 68, and Plaintiff filed a supplemental reply, *see* Dkt. No. 70.

For the reasons and to the extent explained below, the Court GRANTS in part

Plaintiff Whitley Dean's Sealed Motion to Lift Agreed-Upon Protective Order [Dkt. No.

36].

## Background

The parties offer somewhat diverging accounts of the pertinent factual

background and procedural background.

Plaintiff explains that,

[a]fter Plaintiff filed a Motion to Compel production of the accreditation documents (requested in Plaintiff's Requests for Production numbers 3 and 4), the parties agreed, on May 31, 2017, to a Protective Order as part of an agreement in which Defendants would produce all responsive documents to request numbers 3 and 4.

i. TTUHSC eventually produced, by June 23, 2017, more than 3,000 electronic pages of accreditation documents, including over 1,000 pages of internal communications, for which it had originally claimed privilege.

ii. To date, TTUHSC and their counsel have refused to supplement their original response and certify that these 3,000+ pages constitute all of the responsive accreditation documents.

Dkt. No. 36 at 1-2; *see also* Dkt. No. 37 at 1-3.

In response, Defendants explain that,

On May 2, Dean filed a Motion to Compel Defendants to Produce Accreditation Documents. Docs. 22-23. At issue was Dean's dissatisfaction with Defendants' objections to her third and fourth requests for production, wherein she sought access to the following:

3. All reports, evaluations, communications, memorandums or other documents provided since January 1, 2011 to the present by the Accreditation Review Commission on Education for the Physician Assistant to TTUHSC or any department, officer, faculty, or employee thereof.

4. All internal TTUHSC reports, evaluations, communications, memorandums or other documents prepared since January 1, 2011 to the present that relate to the accreditation, accreditation review,

accreditation status, or any other topics related to the accreditation of the TTUHSC Physician Assistant Program, whether prepared by an officer, faculty, or employee of TTUHSC or any other person.

Appendix ("Appx.") at 001-007. TTUHSC objected [to] these requests as follows:

> ... Defendant TTUHSC ... objects that this Request is not proportional to the needs of the case because its temporal limitation pre-dates the time period at issue in this litigation by at least five years.

> Defendant TTUHSC objects to this request because the requested documents are confidential under section 161.032 of the Texas Health and Safety Code and must be withheld on this basis. *See also* TEXAS HEALTH AND SAFETY CODE § 161.031.

Appx. at 020-024.

> Also at issue were the same requests for production propounded on the two individual defendants. Largely identical to those addressed to TTUHSC, personalized differences are italicized and emboldened below:

> 3. All reports, evaluations, communications, memorandums or other documents in your possession prepared, provided, or written by the Accreditation Review Commission on Education for the Physician Assistant regarding the Texas Tech University Health Sciences Center ("TTUHSC") Physician Assistant Program.

> 4. All internal TTUHSC reports, evaluations, communications, memorandums or other documents in your possession that relate to the accreditation, accreditation review, accreditation status, or any other topics related to the accreditation of the TTUHSC Physician Assistant Program, whether prepared by you, any other employee of TTUHSC, or any other person.

Appx. at 008-019 (emphasis added). Defendant Christina Robohm-Leavitt objected to each request because neither is,

> ... proportional to the needs of the case because it lacks any temporal limitations.

> Defendant Robohm-Leavitt objects to this request because the requested documents are confidential under section 161.032 of the Texas Health and Safety Code and must be withheld on this basis. *See also* TEXAS HEALTH AND SAFETY CODE § 161.031.

Appx. at 026-028. Defendant Jankowski objected to the requests on identical grounds. *Id.* at 024-026.

After Dean filed her Motion to Compel, the Court referred the discovery dispute to Magistrate Judge Horan. Doc. 24. Prior to a hearing on the matter, however, this Court granted the parties' Agreed Motion for Protective Order to Preserve Confidentiality of Discovery Information and

Documents. Docs. 29-31. The parties memorialized their agreement on the record at the conclusion of Defendant Jankowski's May 25 deposition in Midland:

> MR. KNOWLTON: The attorneys for the Defendants and I have entered into an agreement about a pending Motion to Compel, which I have filed. That Motion to Compel is limited to a single set of documents, albeit that it's a substantial number of documents, related to the accreditation records of the Health Sciences Center part of the university. We have agreed, and I know Mr. Deal will correct me if I miss anything here, that those will be made available for us for inspection in Lubbock, that we will work on whether we scan or copy any of those records that we want to bring back with us or take.
>
> However, a contingency on those being made available to us is that we will enter into an agreement for an order on confidentiality to be entered. That agreement has, in most forms, been already sent to me, and I completely agree with what Mr. Deal put together. There are going to be two additions to that agreement: One is that it's not a waiver of future objections as to the admissibility of what's provided.
>
> MR. DEAL: Correct.
>
> MR KNOWLTON: And second is that it's not a waiver or any means a waiver of privilege for any order on this proceeding, whatsoever, is that correct?
>
> MR. DEAL: Nor in the future.
>
> MR. KNOWLTON: Nor in the future.
>
> MR. DEAL: Correct.
>
> MR. KNOWLTON: And not confined to this proceeding.
>
> MR. DEAL: Correct.
>
> MR. KNOWLTON: And regard – with that agreement, we're going to – and I believe Mr. Deal is going to file – first notify the court that we have no need for the June 8th motion pending hearing in front of the magistrate, and we'll proceed to do that by agreement instead.

Appx. at 040 (emphasis added); Appx. at 040. Defendants thereafter filed an Advisory with this Court (Doc. 26) and committed to the Court-approved Agreed Protective Order that – heretofore – resolved this matter. Docs. 29-31.

Dkt. 53 at 2-5 (footnote and emphasis omitted).

As the parties' essentially agree, Plaintiff filed her Motion to Compel Defendants to Produce Accreditation Documents [Dkt. No. 22], which Judge Lynn referred to the undersigned for determination. *See* Dkt. No. 24. Thereafter, Defendants filed an Advisory to the Court that explained:

> 1.  The parties are currently conducting depositions in Midland, Texas.
>
> 2.  During the course of depositions, the parties agreed to file an Agreed Motion for a Protective Order that resolves their discovery dispute, referred for your resolution pursuant to Doc. 24 ("Order of Referral").
>
> 3.  The Agreed Motion for a Protective Order ("Agreed Motion") will be filed next week (May 30-June 2, 2017), once the parties are back in their respective offices and able to properly draft the Agreed Motion.
>
> 4.  This forthcoming Agreed Motion, if granted, will resolve the discovery dispute and negate the need for a hearing on Plaintiff's Motion to Compel (currently set for Thursday, June 8, 2017). Docs. 22-23, 25.
>
> 5.  At the conclusion of Mr. Jankowski's deposition on the afternoon of May 25, 2017, the parties stipulated on the record that the discovery dispute referred for your resolution is resolved and that the resolution will be formalized in a forthcoming Agreed Motion for a Protective Order that, among other provisions, provides that Defendants do not waive any privilege now or in the future, and that Defendants do not waive their right to object to the admissibility of any documents uncovered as a result of the Agreed Order.
>
> 6.  The parties will work together to schedule a time and place for Plaintiff's counsel to inspect the documents described in the Motion to Compel. Docs. 22-23.
>
> 7.  Based on the foregoing, Defendants do not intend to file a response to Plaintiff's Motion to Compel.

Dkt. 26 at 1-2.

The Court then entered an electronic order that provided that, "[b]ased on the May 25, 2017 Advisory to the Court [26], the Court vacates the response and reply deadlines set by the Court's May 9, 2017 Order 25 and cancels the hearing on Plaintiff's Motion to Compel Defendants to Produce Accreditation Documents 22

previously set for June 8, 2017" and that "[t]he Court will expect the Agreed Motion for

a Protective Order to be filed by no later than June 2, 2017." Dkt. No. 27.

Defendants then filed the Agreed Motion for a Protective Order to Preserve

Confidentiality of Discovery Information and Documents, which provides:

> NOW COME Defendants, Texas Tech University Health Sciences Center ("TTUHSC"), Jim Jankowski, and Christina Robohm-Leavitt, and hereby move the Court for entry of the following Agreed Protective Order:
>
> 1. Accreditation documents relating to TTUHSC and produced in this litigation, whether pursuant to agreement of the parties or by Court order, will be held in strict confidence by and between the parties to this Agreement and their attorneys.
>
> 2. It is agreed that such information, documents, and things disclosed subject to this Agreement constitute confidential information in which TTUHSC has a bona fide interest in limiting dissemination and shall be considered "Confidential Attorney Eyes Only Information Subject to Protective Order " under the terms of this Agreement.
>
> 3. If produced by TTUHSC, it is agreed that TTUHSC will stamp or mark all such documents and things as "Confidential Attorney Eyes Only Information Subject to Protective Order" before delivery to any other party to this Agreement. If produced by the accreditation body – Accreditation Review Commission on Education for the Physical Assistant ("ARC-PA") – such documents shall automatically be considered "Confidential Attorney Eyes Only Information Subject to Protective Order" and subject to this Agreement. All parties to this Agreement agree to limit dissemination of such "Confidential Attorney Eyes Only Information Subject to Protective Order" documents and information to (1) members of their attorneys' offices working on the case, including both in-house counsel and trial counsel; (2) expert witnesses in the case; (3) fact witnesses in this case (as identified in the parties' initial disclosures or amendments thereto) and (4), if necessary, persons to be identified at a later time. All parties agree to have any person other than the parties' attorneys, expert witnesses, or fact witnesses who will see any document marked "Confidential Attorney Eyes Only Information Subject to Protective Order" sign an addendum to this Agreement, agreeing to abide by the terms of this Agreement, and to make no further dissemination of such documents or things.
>
> 4. No copies of any confidential documents or information will be made other than by counsel for the parties to this Agreement or members of their office staffs. Such copies will be made only for the

purpose of, and to be used in, this litigation, unless otherwise required by law.

5.     Only the parties and their attorneys, expert witnesses, fact witnesses, persons to be identified at a later time (pursuant to paragraph 3), the Court and jury (if and when admitted into evidence) will be allowed to review confidential documents and information subject to this Agreement.

6.     A party may designate information disclosed at a deposition as "Confidential Attorney Eyes Only Information Subject to Protective Order" by requesting the reporter to so designate the transcript or any portion of the transcript at the time of the deposition. If no such designation is made at the time of the deposition, any party will have fourteen (14) calendar days after the date of the deposition to designate, in writing to the other parties and to the court reporter, whether the transcript is to be designated as "Confidential Attorney Eyes Only Information Subject to Protective Order." If no such designation is made at the deposition or within this fourteen (14) calendar day period (during which period, the transcript must be treated as "Confidential Attorney Eyes Only Information Subject to Protective Order," unless the disclosing party consents to less confidential treatment of the information), the entire deposition will be considered devoid of Confidential Attorney Eyes Only Information Subject to Protective Order. Each party and the court reporter must attach a copy of any final and timely written designation notice to the transcript and each copy of the transcript in its possession, custody or control, and the portions designated in such notice must thereafter be treated in accordance with this Agreement.

7.     If any party wishes to submit confidential information to the court, the submission must be filed only in a sealed envelope bearing the caption of this action and a notice in the following form:

CONFIDENTIAL INFORMATION

[caption]

This envelope, which is being filed under seal, contains documents that are subject to a Protective Order governing the use of confidential discovery material.

**No Prejudice.**

8.     By entering into this Agreement, the parties do not waive any privilege(s) now or in the future. The parties also do not waive their right to object to the admissibility of any documents produced in accordance with this Agreement.

9.     Any person who reviews confidential documents and information produced in this litigation agrees not to disseminate, divulge, or discuss the information, documents, or materials to/with anyone other than those persons authorized by this Agreement.

10.     Whitley Dean, Plaintiff, and Texas Tech University Health Sciences Center, Jim Jankowski, and Christina Robohm-Leavitt, Defendants, and their attorneys agree to keep secure and/or protect any and all confidential documents and information subject to this Agreement so that only the parties to this litigation and their attorneys will have access to said documents and information.

11.     This confidentiality agreement is binding on the parties only to the extent that it does not violate any court order, constitutional provision, or statute prohibiting such confidentiality, including but not limited to the Public Information Act.

12.     Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Agreement is under an obligation to destroy or return to the producing party all materials and documents containing Confidential Attorney Eyes Only Information, and to certify to the producing party that this destruction or return has been done.

Dkt. 29 at 1-6.

The Court then granted the Agreed Motion for a Protective Order to Preserve Confidentiality of Discovery Information and Documents [Dkt. No. 29] through an agreed order, *see* Dkt. No. 31 (the "Agreed Protective Order"), and entered an electronic order "terminating Plaintiff's Motion to Compel Defendants to Produce Accreditation Documents [22] based on the May 25, 2017 Advisory to the Court [26] and the filing of the Agreed Motion for a Protective Order to Preserve Confidentiality of Discovery Information and Documents [29]," Dkt. No. 30.

Defendants later filed their Motion for Summary Judgment. *See* Dkt. No. 32.

Plaintiff then filed the Motion to Lift, in which she "asks the Court to lift the Protective Order for the accreditation documents granted on June 2, 2017"; "to award reasonable expenses including attorney fees for this Motion [to Lift]"; and "to order

sanctions against the parties responsible for violating the rules of discovery and improperly claiming privilege and to order such parties to pay reasonable expenses, including attorney fees." Dkt. No. 36 at 1, 4.

At the same time, Plaintiff filed a Motion to Extend Time to Respond to Defendants' Motion for Summary Judgment, *see* Dkt. No. 39, and a Motion for Leave to File an Amended Complaint, *see* Dkt. No. 38. The Court denied the motion to extend time, *see* Dkt. No. 55, and Plaintiff filed her sealed response to Defendants' Motion for Summary Judgment, *see* Dkt. No. 56, and Defendants filed their reply, *see* Dkt. No. 62.

The Court later denied Plaintiff's Motion for Leave to File an Amended Complaint [Dkt. No. 38], explaining that "[t]he deadline for amended pleadings, as set out in the Court's Scheduling Order, was on or before February 28, 2017 (ECF. No. 19)" and that "Plaintiff did not show good cause to amend some three months after the deadline and do so, [] given that the Defendant has moved for summary judgment on the existing pleadings." Dkt. No. 64 at 1.

At oral argument on the Motion to Lift, Plaintiff's counsel clarified that what she really wants is to get the documents included in the sealed appendix to the Motion to Lift out from under confidentiality obligations. *See* Dkt. Nos. 43, 44, 45, 46, & 47.

And, at oral argument, Defendants' counsel acknowledged that the bases for maintaining the confidentiality protections of the documents at issue are their reliance on Texas Health and Safety Code § 161.032(a) and their objection to Plaintiff's retroactively revoking the agreement for the Protective Order entered to resolve the parties' discovery dispute.

**Legal Standards**

As amended, effective December 1, 2015, Federal Rule of Civil Procedure 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

As a general matter, as one court in this circuit recently summarized,

> [c]ourts have recognized that the common law "establishes a presumption of public access to judicial records." "Although the common law right of access to judicial records is not absolute, 'the district court's discretion to seal the record of judicial proceedings is to be exercised charily.'" This right of public access to judicial records applies even in cases in which the information may not be of particular interest to the public. "Although countervailing interests may outweigh the right of public access, the party seeking to overcome the presumption of access bears the burden of showing that the interest in secrecy outweighs the presumption."

-10-

*Eubanks v. Eubanks*, No. CV 17-1217, 2017 WL 3380476, at *3 (E.D. La. Aug. 4, 2017) (footnotes omitted). In that decision, the district court explained that one party "consented to the entry of the protective order to expedite production of documents related to [the other party's] application with the State Department"; that "[t]he trial was ongoing, Mr. Eubanks represented that the State Department required that the documents be kept confidential, Ms. Eubanks needed the documents right away, and the entry of the protective order was the quickest way to obtain the documents"; that, "[i]n reality, confidentiality through the entry of a protective order was not required by the Department of State"; and that the party who insisted on the protective order "has provided no other justification to overcome the presumption that the records should be made accessible to the public." *Id.* The court found "that, with respect to [that party's] job application to the State Department, there is no justification for a protective order." *Id.* (footnote omitted).

A district court retains discretion to modify or vacate a protective order once it has been entered, as United States District Judge Susie Morgan did in *Eubanks. See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (citation omitted); *In re United States' Motion to Modify Sealing Orders*, No. 5:03-mc-2, 2004 WL 5584146, at *2 (E.D. Tex. June 8, 2004). Courts have looked to four factors to guide consideration of whether a modification is appropriate, including: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the reliance on the order; and (4) whether good cause exists for the modification." *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D.

175, 179 (N.D. Ill. 2006) (citation omitted); *accord In re Enron Corp. Secs., Derivative & ERISA Litig.*, No. MDL-1466, 2009 WL 3247432, at *3 (S.D. Tex. Sep. 29, 2009); *Bayer AG and Miles, Inc. v. Barr Labs, Inc.* 162 F.R.D. 456, 458 (S.D.N.Y. 1995).

As to the first factor, relevant to the nature of a confidentiality order is "'its scope and whether it was court imposed or stipulated to by the parties.'" *Murata*, 234 F.R.D. at 179 (quoting *Bayer*, 162 F.R.D. at 465) (citation omitted). Courts are generally more hesitant to modify narrowly defined orders that pertain to "a specific type of identified information," as opposed to blanket confidentiality orders. *Id.* "'An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms, absent good cause to modify or vacate the protective order.'" *Orthoflex, Inc. v. ThermoTek, Inc.*, Nos. 3:11-cv-870-D & 3:10-cv-2618-D, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013) (quoting *Paine v. City of Chicago*, No. 06 C 3173, 2006 WL 3065515, at *2 (N.D. Ill. Oct. 26, 2006)). "As with all contracts, the ultimate question is what was the parties' mutual intent. The answer to that question is to be found within [the protective order's] four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Id.*

As to the second factor regarding foreseeability, the relevant inquiry is "'whether the need for modification of the order was foreseeable at the time the parties negotiated the original stipulated protective order.'" *Murata*, 234 F.R.D. at 180 (quoting *Bayer*, 162 F.R.D. at 466).

As to the third, reliance factor, the Court should consider "'the extent to which a party resisting modification relied on the protective order in affording access to

discovered materials.'" *Id.* It is "'presumptively unfair ... to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.'" *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (quoting *S.E.C. v. TheStreet.com*, 273 F.3d 222, 230 (2d Cir. 2001)).

As to the fourth factor, in evaluating whether good cause for modification exists, "the court must weigh [the] need for modification against [the] need for protection, and ought to factor in the availability of alternatives to better achieve both ... goals." *Murata*, 234 F.R.D. at 180 (citations omitted).

Courts have held that "a party seeking to modify an agreed protective order bears the burden of demonstrating good cause exists to modify the order." *United States ex rel. Long v. GSD&M Idea City LLC*, No. 3:11-cv-1154-O, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) (citing *Orthoflex*, 2013 WL 3095106, at *3). On the other hand, courts have also held that, "[i]f good cause was not shown for the original protective order, the burden of showing good cause is on the party seeking continued confidentiality protection." *Diamond Consortium, Inc. v. Manookian*, No. 4:16-cv-94, 2017 WL 2364040, at *1 (E.D. Tex. May 31, 2017) (citing *United States v. Homeward Residential, Inc.*, No. 4:12-cv-461, 2016 WL 279543, at *4 (E.D. Tex. Jan. 22, 2016); *In re Enron Corp. Sec., Derivative, & ERISA Litig.*, No. MDL-1446, Civ. A. No. H-01-3624, 2009 WL 3247432, at *2 (S.D. Tex. Sept. 29, 2009)).

## Discussion

Plaintiff wants to be able to make her summary judgment response public and to be able to publicly use the accreditation documents that are currently subject to

-13-

confidentiality restrictions under the Agreed Protective Order. *See, e.g.*, Dkt. No. 59 at 3, 5.

Many of her reasons for seeking to lift the Agreed Protective Order were no longer persuasive or viable by the time of oral argument. In the Motion to Lift, Plaintiff contends that "[a]n essential reason for Plaintiff's request to lift the Protective Order is that Plaintiff, in order to fully develop and present her case, must be able to reference the specific facts, conduct, and communications found in the accreditation documents. Such facts will be essential to arguing Plaintiff's case in her Amended Complaint, in her response to Defendants' Motion for Summary Judgment, and when examining witnesses at trial." Dkt. No. 36 at 2-3 (emphasis removed). But Plaintiff's motion for leave to file an amended complaint has been denied; she has filed her summary judgment response, albeit under seal; and the Agreed Protective Order permits examining witnesses at the bench trial in this case and has not impeded Plaintiff's litigating her case.

At oral argument, Plaintiff's counsel candidly admitted that the Motion to Lift is motivated by Plaintiff and her counsel's desire to have publicly available her summary judgment response to Defendants' attacks on her in their summary judgment motion and because Plaintiff's counsel now believes that the confidentiality protections of Texas Health and Safety Code § 161.032(a) do not properly apply to these documents in this case.

The standards, burdens, and principles set out above pull and push the analysis prompted by the Motion to Lift in competing directions. But, after careful

-14-

consideration, the Court reaches the following conclusions: Regardless of whether Plaintiff or Defendants bear the burden of seeking or resisting an order to lift or vacate the Agreed Protective Order, under the particular circumstances here, Plaintiff has successfully carried any obligation to show that the Agreed Protective Order should be vacated as to the documents in the appendix to the Motion to Lift and did not, as Defendants insist, wait too long to do so to file this motion that addresses the confidentiality protections afforded to documents already produced in discovery.

The Agreed Protective Order was entered based on the parties' agreement, and that matters, but only to a point. The Court was not asked to independently make a finding of good cause to enter it. In fact, the point of seeking the Agreed Protective Order was to avoid the necessity of having the Court decide whether the accreditation documents are properly subject to the confidentiality protections of Texas Health and Safety Code § 161.032(a). That was the issue in Plaintiff's Motion to Compel Defendants to Produce Accreditation Documents, *see* Dkt. Nos. 22 & 23, and the parties' agreement to a protective order resolved it, *see* Dkt. Nos. 30.

But Defendants' assertion of the accreditation documents' confidentiality based on Section 161.032(a) remained the only substantive basis for the Agreed Protective Order – pursuant to which Defendants did not resist producing the accreditation documents for use in this litigation but rather only insisted on their being afforded nonpublic, confidential treatment. And the Agreed Protective Order's provisions have now required Plaintiff to file documents on which she relies in support of the merits of the claims and defenses in this case on summary judgment under seal.

The upshot of these observations is that Defendants are not claiming a true evidentiary privilege under Texas Health and Safety Code § 161.032(a) but only a state statutory basis for confidential treatment in this litigation of certain documents.

No matter which way the analysis turns, the Court cannot avoid addressing whether confidentiality protections under Texas Health and Safety Code § 161.032(a) apply to these documents in this case. There is, again, no other basis for keeping these documents under seal and subject to strict confidentiality-related limitations other than the bare fact of Plaintiff's agreement to the Agreed Protective Order, which she now wishes to retract for the not-insubstantial reason that facts bearing on the merits of her claims, as set out in summary judgment briefing, are being kept secret and nonpublic.

As the parties' briefing reflects, under Texas law, the term "medical committee" under the Texas Health and Safety Code is broadly defined, and Defendants may well be right that the Accreditation Review Commission on Education for the Physician Assistant ("ARC-PA") qualifies as a "medical committee" under the statute and, as a general matter, Section 161.032(a) therefore protects accreditation documents generated "for and by" ARC-PA. *See* Dkt. No. 69.

But Section 161.032(a) appears by its own terms – and apparently as applied by Texas courts and at least some federal district courts in Texas – to create an evidentiary privilege from disclosure in discovery: "The records and proceedings of a medical committee are confidential and are not subject to court subpoena." TEXAS

HEALTH AND SAFETY CODE § 161.032(a); *see, e.g.*, *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 718-19 (Tex. 2015).

But the Court is persuaded by now-Chief Judge Lee Rosenthal's analysis that, in a case such as this involving federal and state law claims, that federal privilege law applies where a plaintiff raises both federal and state claims and the evidence at issue is relevant to both. *See Guzman v. Mem'l Hermann Hosp. Sys.*, Civ. A. No. H-07-3973, 2009 WL 427268, at *4-*7 (S.D. Tex. Feb. 20, 2009) (discussing cases). The documents at issue are relevant, for these purposes, to Plaintiff's federal claims under Title VII and the Equal Protection Clause, as actionable under 42 U.S.C. § 1983, as evidenced by Plaintiff's reliance on some of these documents in her summary judgment response and her explanations in the briefing on the Motion to Lift. *See* Dkt. No. 36. It is no answer, in this context, for Defendants to point out that they have filed motions seeking to dismiss all of Plaintiff's Section 1983 claims. *See, e.g.*, Dkt. No. 53 at 17-18; Dkt. No. 69 at 5 n.4.

Under the circumstances here, and for the reasons aptly explained by Judge Rosenthal in *Guzman*, the Court concludes that the federal common law of privilege applies in this case under Federal Rule of Evidence 501. *See generally* FED. R. EVID. 501 ("The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise: • the United States Constitution; • a federal statute; or • rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *American Civil Liberties*

*Union v. Finch*, 638 F.2d 1336, 1344 (5th Cir. Unit A Mar. 1981) ("Privileges are strongly disfavored in federal practice."). And, as the decision in *Guzman* concludes in a related context, there is no evidentiary privilege for medical peer review documents under federal law. *See* 2009 WL 427268, at *3.

Neither is there any federal common law privilege more broadly for medical school accreditation documents, and Defendants do not claim otherwise. Even considering the four-factor test that the Fifth Circuit set out in *Finch* and any reliance interest that Defendants may claim in Section 161.032(a), the Court finds no basis to recognize this state law privilege as a matter of comity after weighing the policies behind the privilege against the policies favoring disclosure, particularly where "[t]he purpose of enacting § 1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials" and "there is a special danger in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged." *Finch*, 638 F.2d at 1343-44 (internal quotation marks omitted).

And, even if Section 161.032(a) could properly provide the rule of decision in this case, Defendants cannot escape Section 161.032(a)'s status under Texas law as an evidentiary privilege by invoking only some confidentiality protection that that section may afford. Under Section 161.032(a), being "confidential" means that a record or proceeding is not subject to discovery – unless, if it is also subject to Texas Occupations Code § 160.007(a) as the records and proceedings of a medical peer review committee, it is found by a judge to be "relevant to an anticompetitive action, or to a civil rights

proceeding brought under 42 U.S.C. Section 1983." TEXAS OCCUPATIONS CODE § 160.007(b). It is not clear whether Section 160.007(b) applies to records or proceedings that are only subject to the so-called medical committee privilege under Section 161.032(a) and not also the medical peer review privilege under Texas Occupations Code § 160.007(a). *See, e.g.*, *Rodriguez v. CHRISTUS Spohn Health Sys.*, C.A. No. C-09-95, 2011 WL 3652189, at *4 (S.D. Tex. Aug. 18, 2011) (stating, without further explanation that, "[w]hile a report prepared by a medical peer review committee or a medical committee generally is privileged the [Texas Occupations Code § 160.007(b)] exception applies"). But the Texas Supreme Court's discussion of these statutory sections' interplay makes clear that the Texas Legislature's declaring records and proceedings to be confidential has the effect of precluding them from discovery, not from public view if they are produced in discovery. *See Memorial*, 464 S.W.3d at 716-19; *see also* TEXAS OCCUPATIONS CODE § 160.007(a) ("Except as otherwise provided by this subtitle, each proceeding or record of a medical peer review committee is confidential, and any communication made to a medical peer review committee is privileged."). As the Texas Supreme Court explained,

> [b]ecause Memorial Hermann has stipulated that those documents are the records and proceedings of a medical peer review committee, section 160.007(b) provides that those documents are "not confidential to the extent [they are] considered relevant." It is impossible to reconcile that provision with a provision stating that the same documents "are confidential and are not subject to court subpoena." Section 160.007 is both the later enacted statute as well as the more specific regarding when records and proceedings are confidential. We therefore hold that the records and proceedings of a dual medical committee and medical peer review committee do not enjoy any greater confidentiality under section 161.032(a) than they do under section 160.007(b).

-19-

*Id.* at 718-19 (footnotes omitted). And the Texas Supreme Court observed that "a record or proceeding is either confidential or not; it cannot be both." *Id.* at 718.

By its own terms and as interpreted by Texas courts, Section 161.032(a) does not afford Defendants the option of agreeing to produce what that state statute might authorize them to refuse to disclose but insisting on doing so only in a nonpublic manner. *See, e.g.*, *Humana Hosp. Corp., Inc. v. Spears-Petersen*, 867 S.W.2d 858, 860-62 (Tex. App. – San Antonio1993, no writ). Even the opinions of the Texas Attorney General's Office to which Defendants point apparently treat Section 161.032(a) as authorizing the withholding of requested information and documents and not producing it but only subject to sealing and nondisclosure obligations. *See* Dkt. No. 53 at 16-17.

In short, Section 161.032(a) creates a state law evidentiary privilege that does not apply in federal court to documents that are relevant to federal claims and that, even if it did, does not afford a party the option to insist on "confidentiality" for produced document based on that statute. The Court finds that Plaintiff has shown that that Agreed Protective Order should be vacated and that, because the Court has now addressed the underlying issue on Plaintiff's motion to compel that entry of the Agreed Protective Order allowed the parties and the Court to avoid resolving on its merits, there is no unfairness to Defendants in dissolving the Agreed Protective Order after they produced the accreditation documents in reliance on its confidentiality provisions.

Defendants still insist that there is good reason for confidential treatment of the accreditation documents, explaining that "[h]ealth sciences centers like the one housed at Texas Tech University cooperate with national accreditation agencies like ARC-PA under assurances of confidentiality"; that, "[w]hen they are investigated, they candidly (but internally) discuss and record potential shortcomings and strategies for improvement"; that "[t]his process enhances the quality of their physician assistant programs and the patient care provided by future physician assistants who graduate and apply their medical skills in surrounding communities"; and that "[n]o prudent health sciences center would openly discuss its flaws with an accreditation commission – or create a record of its efforts to correct them – if it knew that a paper trail of meeting minutes, e-mail correspondence, and draft and final reports could be exploited and turned against them in future litigation." Dkt. No. 69 at 6; *see generally Mem'l Hosp.–The Woodlands v. McCown*, 927 S.W.2d 1, 3 (Tex. 1996).

But Defendants have agreed to let Plaintiff turn these materials against them in this litigation. Section 161.032(a), if it properly applied here, afforded them protection against doing so by refusing to produce any meeting minutes, e-mail correspondence, and draft and final reports in discovery at all. Having now done so, Section 161.032(a) does not authorize Defendants to keep the produced documents on which Plaintiff now relies in support of her federal employment and civil rights claim from public view, and Defendants have not shown good cause for a finding that it should be otherwise for purposes of Rule 26(c)(1).

This determination is not changed by Defendants' inclusion of a non-waiver provision in the Agreed Protective Order. Even if Defendants insist on the need for confidential treatment to preserve a medical committee privilege under Section 161.032(a) in other cases despite the documents' disclosure to Plaintiff in this case, neither Section 161.032(a)'s inapplicable evidentiary privilege nor any non-existent, independent statutory confidentiality treatment requirement grant Defendants a license to preclude these documents from public view in this case. For the reasons explained above, "the reports and communications [do not properly] remain protected from public dissemination" because Defendants contend that "they were created in direct connection with ARC-PA's accreditation review and for no other purpose." Dkt. No. 53 at 10, 12 n.10.

But, under all the circumstances explained above, the Court declines to order any sanctions against Defendants for allegedly violating the rules of discovery and improperly claiming privilege or to order Defendants to pay reasonable expenses, including attorneys' fees.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part Plaintiff Whitley Dean's Sealed Motion to Lift Agreed-Upon Protective Order [Dkt. No. 36] and ORDERS that the Agreed Protective Order [Dkt. No. 31] is vacated as to the documents in the sealed appendix to the Motion to Lift [Dkt. Nos. 43, 44, 45, 46, & 47].

This order is stayed until **October 10, 2017** to allow any party 14 days to file an objection to Judge Lynn under Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636. If an objection is filed, the order is stayed pending further order of the Court.

Finally, out of an abundance of caution, the Court will enter this Memorandum Opinion and Order under seal because some of the underlying motion papers and briefing, from which the Court quoted what appear to be only non-confidential passages, were filed under seal. The parties are further ORDERED to file a joint status report by **October 3, 2017** setting forth their views on whether this Memorandum Opinion and Order contains any confidential information – and, if so, where – and should remain sealed.

SO ORDERED.

DATED: September 25, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE